UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D.O.N.C., a French limited
liability company,

       Plaintiff,

     v.

BPH MICHIGAN GROUP, LLC,
a Michigan limited liability company,
and ANTOINE GENDRE,

       Defendants.
_____/

Case No. 20-11265

Hon. George Caram Steeh

OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 46)

Plaintiff seeks partial summary judgment on Defendant's liability in this breach of contract action. Because there is a question of fact whether the Michigan Real Estate Brokers' Act precludes recovery under the parties' agreement, Plaintiff's motion is denied.

BACKGROUND FACTS

Plaintiff D.O.N.C. is a French financial services company that offers wealth management services to its clients. Defendant BPH Michigan Group ("BPH") is a real estate investment company owned by Antoine Gendre, which owns homes and other properties in Michigan. In 2016, BPH and D.O.N.C. entered into a written agreement in France. Plaintiff has provided

-1-

a certified English translation of the agreement, which was written in French. Under a heading titled "Purpose of the Agreement," the contract states that "The Principal [BPH] asks the Agent [D.O.N.C.], who accepts, to sell the goods indicated in this Agreement in the name and on behalf of the Principal, pursuant to the conditions set out herein and on an exclusive basis." ECF No. 46-11. The next heading references the "Description of the Properties to Sell" and provides that "[T]he properties for sale are located in Detroit" and "[a] list of the properties has been attached hereto." *Id.* at Art. 2. Attached to the contract is a list of approximately 100 properties and corresponding prices, located primarily in Detroit, Michigan. The agreement further provides that "[t]he lots described above must be presented for sale at prices matching the listing. . . ." *Id.* D.O.N.C's compensation "is set at 11% (ELEVEN PERCENT) excluding tax of the price for each lot." *Id.* at Art. 3. According to the contract, "The Agent's [D.O.N.C.'s] assignment includes the entire selling process, from finding buyers to signing the final deed of sale (HUD)." *Id.* at Art. 6.

The agreement includes a provision that "the Principal shall refrain from . . . directly or indirectly canvassing" D.O.N.C's sub-agents, employees, and "the buyers of the lots presented, by any means whatsoever, by the Agent." *Id.* at Art. 1. In particular, BPH agreed "to not

sell without the Agent's assistance to any buyer presented by the Agent during the execution of this Agreement, including after the termination or expiration hereof." *Id.* at Art. 9. The agreement "shall be exclusive for its entire duration." *Id.* at Art. 8.

Plaintiff alleges that BPH breached the agreement by (1) failing to pay its fee for sales of properties on the exclusive list; (2) failing to pay its fee for sales of properties to its clients or affiliates; and (3) soliciting and selling property to its affiliates, contrary to the non-competition clause. Plaintiff contends that all of the properties on the exclusive list have been sold and BPH has not paid the eleven percent fee. Plaintiff also asserts that BPH solicited and sold at least eight properties to D.O.N.C's affiliates, without paying the fee and in violation of the non-competition clause. BPH primarily argues that Plaintiff may not recover its fee because it was acting as an unlicensed real estate broker, contrary to the Michigan Real Estate Brokers' Act, and that the contract is therefore unenforceable.

LAW AND ANALYSIS

I. <u>Summary Judgment Standard</u>

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary

judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient to meet this burden; the evidence must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

II. <u>Choice of Law</u>

The parties initially agreed that Michigan law applies to this case in their briefing of Defendant's motion to dismiss and Plaintiff's first motion for summary judgment. In neither round of briefing did the parties present an English translation of their agreement. Once the court required Plaintiff to produce an English translation of the contract, it became clear that the agreement contained a choice-of-law clause: "This Agreement is subject to

French law for its validity, interpretation, and execution." ECF No. 46-11, Art. 13. Nonetheless, in the instant motion, Plaintiff asserts that the French law of contracts is substantially the same as that of Michigan and that a choice-of-law analysis is unnecessary. ECF No. 46 at PageID 811-12. *See CenTra, Inc. v. Estrin*, 538 F.3d 402, 409 (6th Cir. 2008) (when possible sources of law are consistent, the court need not resolve such a "false conflict").

However, when discussing the applicability of the Michigan Real Estate Brokers' Act, Plaintiff asserts that contract is "governed by French law" and that REBA does not apply. ECF No. 46 at PageID 819. Plaintiff does not undertake a choice-of-law analysis, relying solely on the choice-of-law provision in the parties' agreement.

To rule on the validity of the choice-of-law provision, the court would ordinarily conduct a choice-of-law analysis under Michigan law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (federal court sitting in diversity applies the choice-of-law rules of the forum state); *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 126 (1995). However, Plaintiff has waived the ability to rely upon the choice-of-law provision by filing its complaint and otherwise conducting this litigation under Michigan law. In its complaint, Plaintiff asserted claims apparently

arising under Michigan law: (1) breach of contract; (2) unjust enrichment; (3) common law unfair competition; (4) fraudulent inducement; and (5) tortious interference with business expectancy. ECF No. 1. The complaint does not refer to French law. To the extent Plaintiff's choice of law was not explicit in the complaint, it became so when the parties briefed Defendant's motion to dismiss, which relied exclusively on Michigan law. Plaintiff's response also cited only to Michigan law and, despite the choice-of-law clause, never suggested that French law should apply. ECF No. 8.

Plaintiff advocated for and acquiesced to the application of Michigan law throughout this case, in particular when the court considered the applicability of REBA in ruling on Defendant's motion to dismiss. Plaintiff may not reverse course now. *See Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009) (noting that a party "is not entitled to get a free peek at how his dispute will shake out under Illinois law and, when things don't go his way, ask for a mulligan under the laws of a different jurisdiction").

III.     Applicability of REBA

Part of the Michigan Occupational Code, REBA requires that real estate brokers and salespersons be licensed by the state. The act defines "real estate broker" as follows:

> "Real estate broker" means an individual or business entity that, with intent to collect or receive a fee, compensation, or valuable consideration, sells or offers for sale, buys or offers to buy, provides or offers to provide market analyses of, lists or offers or attempts to list, or negotiates the purchase, sale, or exchange of real estate; that negotiates the mortgage of real estate; that negotiates for the construction of a building on real estate; that leases or offers or rents or offers for rent real estate or the improvements on the real estate for others, as a whole or partial vocation; that engages in property management as a whole or partial vocation; that sells or offers for sale, buys or offers to buy, leases or offers to lease, or negotiates the purchase or sale or exchange of a business, business opportunity, or the goodwill of an existing business for others; or that, as owner or otherwise, engages in the sale of real estate as a principal vocation.

M.C.L. § 339.2501(u). A "business entity" is defined as a "partnership, association, corporation, limited liability company, or common law trust."

M.C.L. §§ 339.2501(b), 339.105(5)(b).

In order to maintain an action in Michigan for compensation earned as a real estate broker, one must be licensed:

> A person engaged in the business of, or acting in the capacity of, a person required to be licensed under this article, shall not maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article at the time of the performance of the act or contract.

M.C.L. § 339.2512a.

Defendant argues that this requirement precludes Plaintiff's claims, because Plaintiff is admittedly not a licensed real estate broker in Michigan. Plaintiff rejoins that REBA is not applicable to it because the statute does not apply "extraterritorially" and because it did not act as a real estate broker as defined in the statute.

Plaintiff argues that it is not covered by the statute because the definition of "business entity" does not include French société par actions simplifiée ("SAS") companies. The statute does apply to limited liability companies, however, and a société par actions simplifiée is a French limited liability company, as Plaintiff pleaded in its complaint. ECF No. 1 at ¶ 2. *See In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, 2006 WL 1288298, at *2 (S.D.N.Y. May 9, 2006) ("Airbus is organized and governed under French law as a limited liability company or 'S.A.S.' (Societe par Actions Simplifiee)."); J. Christian Nahr, *What Is a "Security" for Purposes of the U.S. Federal Securities Laws? An Analysis of Foreign Equity Interests*, 17 Am. U. Int'l L. Rev. 723, 758 (2002) ("The closest equivalent to an LLC in France is the société par actions simplifiée."); *see also Pritred 1, LLC v. United States*, 816 F.Supp.2d 693, 697 n.1 (S.D. Iowa 2011) ("A société par actions simplifiée . . . is a form of a simplified French business entity and is treated as a corporation under French law.").

Plaintiff has not articulated how a SAS is substantively different than a limited liability company (or a corporation) such that it is excluded from the statutory definition of "business entity," which broadly includes partnerships, associations, corporations, limited liability companies and common law trusts. M.C.L. §§ 339.2501(b), 339.105(5)(b).

Plaintiff also asserts that REBA does not apply extraterritorially to it as a French company performing a contract in France. "The general rule of law is 'that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction.' . . . [T]he presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it." *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 434-35 (1982) (citations omitted). "In order for a statute to have extraterritorial application, there must be clear legislative intent." *Id.* at 434.

The application of REBA in this case would not necessarily result in the extraterritorial application of Michigan law. The subject matter of the parties' agreement are properties primarily located in Michigan and owned by a Michigan company. REBA precludes actions for compensation by unlicensed brokers only "in a court of this state [Michigan]." Under these facts, when Plaintiff has availed itself of a Michigan forum to obtain

-9-

compensation for the sale of Michigan properties on behalf of a Michigan company, the application of REBA is not extraterritorial. *See Sexton*, 413 Mich. at 436 ("We are not convinced that the application of the owners' liability statutes under these facts results in an extraterritorial application of Michigan law" when the statute governed a relationship that took place in Michigan).

Moreover, to the extent the application of REBA to a nonresident company could be deemed "extraterritorial," the statute clearly evidences such an intent, because it provides an avenue for nonresidents to obtain a real estate broker's license. M.C.L. § 339.2514 ("A nonresident of this state may become a real estate broker or a real estate salesperson by conforming to the requirements of this article.").

Plaintiff next argues that it did not act as a "real estate broker" as defined in the statute. *See* M.C.L. § 339.2501(u). The statute "expressly requires that one be a licensed real estate broker only if, for a fee, one 'sells or buys' real estate or 'negotiates' a real estate transaction for another." *G.C. Timmis & Co. v. Guardian Alarm Co.*, 468 Mich. 416, 427 (2003). Plaintiff asserts that it was solely acting as a "finder," which does not fall within the statutory definition of real estate broker. *Id.* The statute "does not require one to be a licensed real estate broker when one merely

performs a 'usual function' of a real estate broker, such as 'finding' a purchaser." *Id.*

Plaintiff contends that the contract did not require it to sell or to negotiate the sale of property, and that it did not in fact do so. Defendant asserts that Plaintiff marketed the properties, met with potential buyers, made and accepted offers, prepared purchase agreements, accepted deposits, and obtained executed closing documents. *See* ECF No. 47-3 (Declaration of Antoine Gendre).[1] Accordingly, the parties dispute the nature of the activities Plaintiff undertook to perform the contract.

Perhaps more important, the language throughout the parties' agreement, which Plaintiff avoids quoting in its brief, contemplates that Plaintiff would be selling the properties: "The Agent's [D.O.N.C.'s] assignment includes the entire selling process, from finding buyers to signing the final deed of sale (HUD)." ECF No. 46-11 at Art. 6. In light of this language, the court cannot determine as a matter of law that Plaintiff

---

[1] Plaintiff argues that the court should disregard the Declaration of Antoine Gendre because the facts set forth therein are not within the personal knowledge of the declarant. Plaintiff is correct that facts averred "upon information and belief" are not admissible on summary judgment. *Ondo v. City of Cleveland*, 795 F.3d 597, 604-05 (6th Cir. 2015) (An affiant's "statement . . . based upon his 'belief' . . . [does] not demonstrate the personal knowledge required by [Rule 56]."). Under this rule, paragraphs 6 and 7 of the declaration are inadmissible. Gendre otherwise states that he has "personal knowledge" of the facts set forth in the declaration. Plaintiff's challenge to the credibility and/or foundation of this statement is not resolvable on summary judgment.

merely acted as a "finder" under the agreement and is not subject to REBA. Plaintiff is not entitled to summary judgment.[2]

## CONCLUSION

Because a question of fact exists regarding whether REBA applies to preclude recovery under the contract, Plaintiff is not entitled to summary judgment on its breach of contract claim. Therefore, IT IS HEREBY ORDERED that Plaintiff's amended motion for summary judgment (ECF No. 46) is DENIED.

Dated: January 14, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 14, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk

---

[2] Plaintiff argues that any provision of the contract that is barred by REBA may be severed. Plaintiff does not, however, specify which provisions it believes may be severed and which provisions would remain.

-12-