UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D.O.N.C., a French limited
liability company,

       Plaintiff,

   v.

BPH MICHIGAN GROUP, LLC,
a Michigan limited liability company,
and ANTOINE GENDRE,

       Defendants.
_____/

Case No. 20-11265

Hon. George Caram Steeh

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

In this breach of contract action, the court held a bench trial and the parties have submitted post-trial briefing. Plaintiff, D.O.N.C., alleges that Defendant BPH Michigan Group LLC breached the parties' exclusive agreement with regard to the sale of certain Michigan properties. Among other defenses, BPH contends that D.O.N.C. acted as an unlicensed real estate broker and is barred from recovery under the Michigan Real Estate Brokers' Act ("REBA"). The court finds that, under the facts of this case, REBA precludes Plaintiff's recovery.

-1-

## FINDINGS OF FACT

Plaintiff is a French financial services company that offers wealth management services to its clients, who reside outside of the United States. Plaintiff considers its relationships with its clients to be its most valuable asset. Defendant BPH Michigan Group ("BPH") is a real estate investment company owned by Antoine Gendre, which owned homes and other properties in Michigan. In 2016, BPH and D.O.N.C. entered into a written agreement in France. Plaintiff has provided a certified English translation of the agreement, which was written in French. The parties agree that the intent of the contract was that D.O.N.C. would be BPH's agent in France for any property BPH had to sell. ECF No. 64 at PageID 1997.

Under a heading titled "Purpose of the Agreement," the contract states that "The Principal [BPH] asks the Agent [D.O.N.C.], who accepts, to sell the goods indicated in this Agreement in the name and on behalf of the Principal, pursuant to the conditions set out herein and on an exclusive basis." ECF No. 60-2. The next heading references the "Description of the Properties to Sell" and provides that "[T]he properties for sale are located in Detroit" and "[a] list of the properties has been attached hereto." *Id.* at Art. 2. Attached to the contract is a list of approximately 100 properties and

corresponding prices, located primarily in Detroit, Michigan. The agreement further provides that "[t]he lots described above must be presented for sale at prices matching the listing. . . ." *Id.* D.O.N.C's compensation "is set at 11% (ELEVEN PERCENT) excluding tax of the price for each lot." *Id.* at Art. 3. According to the contract, "The Agent's [D.O.N.C.'s] assignment includes the entire selling process, from finding buyers to signing the final deed of sale (HUD)." *Id.* at Art. 6.

Article 7 of the agreement grants the following powers to D.O.N.C. "to fulfill its assignment":

> (1) to indicate, present, and, when applicable, to have the properties for sale visited by any person deemed appropriate, under its own responsibility and in accordance with the applicable safety rules;
> (2) to perform any advertising by the means deemed most appropriate;
> (3) to request any necessary documents, deeds, and certificates from any private or public entities or stakeholders, and, if necessary, to carry out any administrative procedures, either on its own or through the professional in charge of drafting the final deeds of sale;
> (4) to disclose the sale file of a lot to any natural or legal person who may be involved in the sale;
> (5) to establish any preliminary sale and purchase agreements under the prices, charges, and conditions of this Agreement using the standard model approved by the undersigned Parties, and to collect the signature of the future buyer.

ECF No. 60-2 at Art. 7. Article 10 lists D.O.N.C.'s "obligations": "The Agent must inform the Principal of the progress of its assignment, in particular the signing of each preliminary sale and purchase agreement." *Id.* "The Agent must make every effort to carry out its assignment within the framework of the powers hereby granted to it." *Id.*

The agreement includes a provision that "the Principal shall refrain from . . . directly or indirectly canvassing" D.O.N.C's sub-agents, employees, and "the buyers of the lots presented, by any means whatsoever, by the Agent." *Id.* at Art. 1. In particular, BPH agreed "to not sell without the Agent's assistance to any buyer presented by the Agent during the execution of this Agreement, including after the termination or expiration hereof." *Id.* at Art. 9. The agreement "shall be exclusive for its entire duration." *Id.* at Art. 8. The initial term of the contract was for four months, to be renewed every four months until canceled by one of the parties by registered letter. *Id.*

Antoine Gendre testified that D.O.N.C. handled the marketing of BPH properties and administered the sale process through closing, including filling out purchase agreements and HUD statements. ECF No. 65 at PageID 2105-2107, 2113-15, 2135. He stated that he and his staff had daily contact with D.O.N.C. to discuss matters related to the property sales.

-4-

*Id.* at PageID 2110-11. A co-founder of D.O.N.C., Solange Dahan, testified that D.O.N.C. is a real estate agency in France, offering U.S. properties to its French clients. *Id.* at PageID 2166-67. Dahan marketed BPH properties to her clients. *Id.* She testified that Gendre did not interact with her clients prior to closing. *Id.* at PageID 2172. Another co-founder of D.O.N.C., however, Franck Nogues, denied that D.O.N.C. sells property. ECF No. 64 at PageID 2011, 2016. With regard to D.O.N.C.'s activities and performance of the contract, the court credits the more specific and detailed testimony provided by Gendre and Dahan.

Pursuant to the agreement, BPH paid the eleven percent fee to D.O.N.C. after the sale of several properties. *See* ECF No. 58 (Stipulations of Fact). Gendre testified that the relationship ended in late 2017 and that D.O.N.C. did not contact him with buyers after that date. ECF No. 65 at PageID 2116-18. Similarly, Dahan testified that the relationship ended in November 2017 and that D.O.N.C. did not work with BPH after that. *Id.* at 2173. However, neither party issued a notice of termination, as provided for in the agreement.

In 2018, BPH sold properties to individuals that D.O.N.C. considered to be its affiliates, without paying a fee to D.O.N.C. BPH also sold all of the properties on the exclusive property list, again without paying a fee to

D.O.N.C. The parties agree that D.O.N.C. did not participate in these sales, which occurred without its knowledge. D.O.N.C. seeks its fee based upon the exclusivity and non-competition provisions of the agreement. D.O.N.C. alleges that BPH breached the agreement by (1) failing to pay its fee for sales of properties on the exclusive list; (2) failing to pay its fee for sales of properties to its clients or affiliates; and (3) by soliciting and selling property to its affiliates, contrary to the non-competition clause. As an alternative to its breach of contract claim, D.O.N.C. asserts a claim for unjust enrichment. BPH contends that it does not owe a fee to D.O.N.C. because the sales occurred after the termination of the agreement and/or to individuals that were not D.O.N.C. affiliates. BPH also argues that D.O.N.C. is barred from recovery under REBA, which precludes suits for compensation by unlicensed brokers.

## CONCLUSIONS OF LAW

Part of the Michigan Occupational Code, REBA requires that real estate brokers and salespersons be licensed by the state. *See* M.C.L. 339.601(1). The purpose of the statute "is to protect the integrity of real estate transactions by ensuring that they are brokered by persons expert in that realm." *G.C. Timmis & Co. v. Guardian Alarm Co.*, 468 Mich. 416, 424,

662 N.W.2d 710, 715 (2003). The act defines "real estate broker" as follows:

> "Real estate broker" means an individual or business entity that, with intent to collect or receive a fee, compensation, or valuable consideration, sells or offers for sale, buys or offers to buy, provides or offers to provide market analyses of, lists or offers or attempts to list, or negotiates the purchase, sale, or exchange of real estate; that negotiates the mortgage of real estate; that negotiates for the construction of a building on real estate; that leases or offers or rents or offers for rent real estate or the improvements on the real estate for others, as a whole or partial vocation; that engages in property management as a whole or partial vocation; that sells or offers for sale, buys or offers to buy, leases or offers to lease, or negotiates the purchase or sale or exchange of a business, business opportunity, or the goodwill of an existing business for others; or that, as owner or otherwise, engages in the sale of real estate as a principal vocation.

M.C.L. § 339.2501(u). A "business entity" is defined as a "partnership, association, corporation, limited liability company, or common law trust." M.C.L. §§ 339.2501(b), 339.105(5)(b).

In order to maintain an action in Michigan for compensation earned as a real estate broker, one must be licensed:

> A person engaged in the business of, or acting in the capacity of, a person required to be licensed under this article, shall not maintain an action in a court of this state for the collection of compensation for the performance of an act or contract for which a license is required by this article without alleging and proving that the person was licensed under this article at the time of the performance of the act or contract.

M.C.L. § 339.2512a. It is undisputed that D.O.N.C. is not licensed as a real estate broker in Michigan; accordingly, Defendant argues that Plaintiff is barred from maintaining this action pursuant to M.C.L. § 339.2512a.

Plaintiff responds that REBA does not apply for several reasons. As a threshold matter, Plaintiff asserts that REBA does not apply because the contract contains a choice-of-law provision indicating that it is governed by French law. *See* ECF No. 60-2 at Art. 13 ("This agreement is subject to French law for its validity, interpretation, and execution."). The court has previously ruled that Plaintiff waived the right to rely upon French law by failing to raise the issue earlier, by failing to undertake a choice-of-law analysis, and by relying on Michigan law at the outset of this litigation. ECF No. 50. The court finds no grounds to disturb that ruling.

In addition, the court predicts that Michigan courts would apply REBA under the facts of this case, despite the choice-of-law clause. As a federal court sitting in diversity, the court applies the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016). In resolving conflict issues in contract cases, Michigan courts follow § 187 and § 188 of the Restatement (Second) of Conflict of Laws. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 117, 528 N.W.2d 698, 699

(1995). Under § 187(2), the choice of law of the parties will apply unless "(a) the chosen state has no substantial relationship to the parties or the transaction . . ." or "(b) application of the law of the chosen state would be contrary to a fundamental public policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187(2) (1971). In the absence of a choice-of-law provision, Michigan courts generally apply the law of the forum, unless "(1) no substantial relationship exists between the forum state and the contract, or (2) the application of forum law would conflict with the policy interest of a state with a greater connection to the contract than the forum state." *Solo*, 819 F.3d at 794.

Plaintiff is a French entity and performed the agreement in France by offering to sell Michigan properties to French clients. Defendant is a Michigan limited liability company and the properties that are the subject of the contract are located in Michigan. Consistent with the licensing scheme set forth in the Occupational Code, which applies to residents and non-residents, Michigan has a significant interest in ensuring that those acting as real estate brokers are licensed by the state. *See* M.C.L. § 339.2514

-9-

(requirements for non-residents to become licensed). It has demonstrated this interest by barring unlicensed brokers from maintaining actions for compensation in Michigan courts. *See* Restatement (Second) of Conflict of Laws, § 187 cmt. g ("A fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal."). With respect to property sales within its borders, Michigan has a materially greater interest than France in ensuring that brokers are licensed in accordance with its Occupational Code, "to protect the integrity of real estate transactions" in Michigan. *G.C. Timmis*, 468 Mich. at 424. Given Michigan's contacts with the agreement and the fundamental policy embodied in its licensing scheme, the court finds that REBA applies to this action under Michigan's choice-of-law rules. *See generally Chrysler,* 448 Mich. at 125 ("Fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and state regulation."); *Hudson v. Mathers*, 283 Mich. App. 91, 97, 770 N.W.2d 883, 887 (2009) (affirming dismissal of claim when agency was not licensed under Michigan Occupational Code, despite Georgia choice-of-law clause, where Georgia did not have a substantial relationship to the parties or transaction and the plaintiff was untimely in raising choice-of-law issue); *Martino v. Cottman Transmission Sys., Inc.*, 218 Mich. App. 54, 61, 554 N.W.2d 17, 21 (1996)

(Michigan had materially greater interest than Pennsylvania in applying its franchise law, which was "designed to make certain contract provisions illegal and to protect potential franchisees from the superior bargaining power of franchisors").

Plaintiff argues that REBA does not apply because it did not act as a real estate broker, but merely a "finder" of purchasers. *See* M.C.L. § 339.2501(u). The statute "expressly requires that one be a licensed real estate broker only if, for a fee, one 'sells or buys' real estate or 'negotiates' a real estate transaction for another." *G.C. Timmis*, 468 Mich. at 427. A person that acts as a "finder" does not fall within the statutory definition of real estate broker. *Id.* The statute "does not require one to be a licensed real estate broker when one merely performs a 'usual function' of a real estate broker, such as 'finding' a purchaser." *Id.*

Based upon the testimony of Gendre and Dahan, as well as the unambiguous language of the parties' agreement, the court concludes that D.O.N.C. acted as a real estate broker and not as a mere finder of purchasers. The contract provides that "[t]he Agent's [D.O.N.C.'s] assignment includes the entire selling process, from finding buyers to signing the final deed of sale (HUD)." ECF No. 60-2 at Art. 6. The evidence demonstrates that D.O.N.C. performed the powers and obligations set forth

-11-

in the agreement. D.O.N.C. did not merely introduce buyers to BPH, but offered the properties for sale and administered the sale process by obtaining the buyers' signatures on purchase agreements, arranging for deposits, and filling out HUD statements in preparation for closing. D.O.N.C. acted as BPH's agent and BPH did not generally interact with the buyers prior to closing.

Because D.O.N.C. acted as an unlicensed real estate broker in performing the agreement, it "shall not maintain an action in a court of this state for the collection of compensation" under that agreement. M.C.L. § 339.2512a. D.O.N.C. argues that it did not actually act as a real estate broker for the sales at issue, because the properties were sold without its knowledge in violation of the exclusivity and non-competition provisions of the agreement. In other words, D.O.N.C. asserts that because it did not actually sell these properties, it was not acting as a real estate broker under the statute. Further, according to D.O.N.C., its only "obligations" under the contract were set forth in Article 10, requiring it to inform BPH of its progress and use its best efforts, not act as a broker. ECF No. 60-2 at Art. 10.

D.O.N.C.'s strained reading ignores the language of the contract as a whole, which refers to the sale of property throughout. The contract

-12-

requires it to act as a real estate broker, as it is responsible for the "entire selling process" and the purpose of the agreement was for D.O.N.C. to "sell the goods . . . in the name and on behalf of" BPH. ECF No. 60-2 at Art. 1, 6. D.O.N.C. is obliged to "make every effort to carry out its assignment," which "includes the entire selling process." *Id.* at Art. 6, 10.

The statute prohibits an unlicensed broker from maintaining an action "for the collection of compensation *for the performance of an act or contract for which a license is required by this article*." M.C.L. § 339.2512a (emphasis added). Because performance of the contract requires a license, D.O.N.C. may not maintain an action for compensation for breach of the contract under the plain language of the statute.

D.O.N.C. suggests that any provisions of the contract that violate REBA may be severed, and that it may be compensated for BPH's violations of the exclusivity and non-competition provisions of the agreement, which do not require a license. D.O.N.C. does not explain which portions of the contract may be severed and which would remain. In any event, for severance to be appropriate, "the illegal provision must not be central to the parties' agreement." *Stokes v. Millen Roofing Co.*, 466 Mich. 660, 666 (2002). "If the agreements are interdependent and the parties would not have entered into one in the absence of the other, the

-13-

contract will be regarded . . . as entire and not divisible." *Id.* (quoting 3 Williston, Contracts (3d ed), § 532, p. 765). D.O.N.C. has provided no evidence that the parties would have entered into the exclusivity or non-competition provisions without also requiring D.O.N.C. to sell property on BPH's behalf. The purpose of these provisions is to protect D.O.N.C.'s sales efforts and there is no indication that they are independent of D.O.N.C.'s sales assignment.

The Michigan Supreme Court addressed a similar argument from a builder who was precluded from recovering under a contract because he was not licensed under the Occupational Code. The builder argued that he should nonetheless be permitted to recover compensation for the materials he supplied, because although he needed a license to install a roof, he did not need a license to supply materials, and the contract should be severed accordingly. The court declined, noting that the agreement to supply the materials was not independent of the agreement to install them. Further, the court found that the statute "prohibits" bifurcation of a contract. The court reasoned that, similar to REBA, the Residential Builders' Act "bars a suit for compensation if a license was necessary for performance of 'an act or contract.' The statute requires us to look for either an act or a contract requiring a license. It does not make provision for bifurcating building

-14-

contracts into separate labor and supply components." *Stokes*, 466 Mich. at 667. Consistent with *Stokes*, the court finds that REBA may not be circumvented by severing the parties' agreement.

Plaintiff further argues that REBA should not extend to its conduct in France. "The general rule of law is 'that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction.' . . . [T]he presumption is that the statute is intended to have no extraterritorial effect, but to apply only within the territorial jurisdiction of the state or country enacting it." *Sexton v. Ryder Truck Rental, Inc.*, 413 Mich. 406, 434-35 (1982) (citations omitted). "In order for a statute to have extraterritorial application, there must be clear legislative intent." *Id.* at 434.

The application of REBA in this case would not result in the extraterritorial application of Michigan law. The subject matter of the parties' agreement are properties primarily located in Michigan and owned by a Michigan company. REBA precludes actions for compensation by unlicensed brokers only "in a court of this state [Michigan]." Under these facts, when Plaintiff has availed itself of a Michigan forum to obtain compensation for the sale of Michigan properties on behalf of a Michigan company, the application of REBA is not extraterritorial. *See Sexton*, 413

Mich. at 436 ("We are not convinced that the application of the owners' liability statutes under these facts results in an extraterritorial application of Michigan law" when the statute governed a relationship that took place in Michigan).

Moreover, to the extent the application of REBA to a nonresident company could be deemed "extraterritorial," the statute clearly evidences such an intent, because it provides an avenue for nonresidents to obtain a real estate broker's license. M.C.L. § 339.2514 ("A nonresident of this state may become a real estate broker or a real estate salesperson by conforming to the requirements of this article.").

For the foregoing reasons, the court finds that REBA applies to bar Plaintiff's recovery on its breach of contract claim. REBA also precludes Plaintiff's claim for unjust enrichment. Interpreting similar statutory bars, Michigan courts have concluded that they preclude equitable as well as contractual relief. *Hudson*, 283 Mich. App. at 97 (statutory bar precluded unlicensed personnel agency from bringing breach of contract or unjust enrichment claim); *Stokes*, 466 Mich. at 673 (unlicensed builder "cannot have equitable relief because any such relief would allow equity to be used to defeat the statutory ban on an unlicensed contractor seeking compensation for residential construction").

Consistent with these findings of fact and conclusions of law, the court finds in favor of Defendants and will enter judgment accordingly.

SO ORDERED.

Dated: November 16, 2023

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 16, 2023, by electronic and/or ordinary mail.

s/Michael Lang
Deputy Clerk